UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Newport News Division)

| | | |
|---|---|---|
| MISTER FRAZIER, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| L.F., by her legal custodian and next friend, | ) | |
|   Rodney Murphy | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RODNEY MURPHY, | ) | |
| | ) | |
| and | ) | Case #4:17-cv-_____ |
| | ) | |
| PAMELA MURPHY, | ) | <u>COMPLAINT</u> |
| | ) | |
|      Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHEN T. COOKE, | ) | |
| 1617 Pine Tree Drive | ) | |
| Gloucester Point, VA  23062 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SANDRA T. COOKE | ) | |
| 1617 Pine Tree Drive | ) | |
| Gloucester Point, VA  23062 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DOUGLAS CLARK, | ) | |
| 6568 Poplar Pond Road | ) | |
| Gloucester, VA  23061 | ) | |
| | ) | |
| and | ) | |
| | ) | |

CHRISTINA ANNE COOKE                    )
8326 Chestnut Point Lane                )
Hayes, VA 23072                         )
                                        )
         Defendants.                    )


<u>Preliminary and Jurisdictional Statement</u>

1.  This action arises out of a racially motivated attack by two white men on their

neighbors, two African-American teenagers, plaintiffs Mister Frazier ("Happy") and his younger

sister L.F., as part of an attempt to drive them and their family from their home.  In due course,

in the Gloucester County Circuit Court, defendants Stephen Cooke and Douglas Clark were

convicted of assault and battery of Happy, and defendant Cooke also was convicted of assault of

L.F..  This attack was preceded and followed by a campaign by Mr. Cooke and his wife,

defendant Sandra Cooke, to drive plaintiffs and their family – the only African Americans on the

block – out of the neighborhood via rumors, hostility, and ongoing harassment.  In this action,

plaintiffs seek to recover for the injuries they suffered due to acts of racial violence, intimidation,

and harassment by defendants Mr. Cooke, Ms. Cooke, and Mr. Clark.  Following receipt of

plaintiffs' counsel's letter informing defendant Stephen Cooke of his potential civil liability and

plaintiffs' intention to file suit, Mr. and Ms. Cooke conspired with their daughter, defendant

Christina Cooke, who also was the girlfriend of defendant Clark at the time of the attack, to

transfer valuable real property to her so as to frustrate plaintiffs' anticipated recovery of

damages.  Plaintiffs thus seek to void this transfer as fraudulent pursuant to Virginia law.

2.  This case arises under the Thirteenth Amendment of the United States Constitution, 42 U.S.C. §1982,  42 U.S.C. §1985(3), and the Fair Housing Act, 42 U.S.C. §§3604 and 3617, over which this Court has jurisdiction under 28 U.S.C. §1331.  The Court has supplemental jurisdiction under 28 U.S.C. §1367 over state law claims that arise out of the identical facts giving rise to the federal claims, including claims arising under Virginia's civil hate crime statute, *Code of Va.* §8.01-42.1, and assault and battery.  The Court also has supplemental jurisdiction over plaintiffs' state law claim to avoid the Cookes' fraudulent transfer under *Code of Va.* §55-82, as the claim relates to collecting any judgment arising out of the claims here at bar, thus forming part of the same case or controversy.  The Court's supplemental jurisdiction over the fraudulent transfer claim includes pendent party jurisdiction over Christina Cooke, as she is a necessary party to the claim, and exercising pendent party jurisdiction serves the policies of judicial economy, convenience, and fairness to the litigants.

<u>Parties</u>

3.  Plaintiff Mister Frazier is a resident of Yorktown, Virginia.  At the time relevant to this action, he lived in Gloucester Point with his aunt and uncle, Rodney and Pamela Murphy, who had been his legal guardians since he was an infant.  He goes by the name of "Happy," his grandfather's nickname.  Now 18 years old, Happy was 16 years old at the time of the events giving rise to this lawsuit.  He is a soft-spoken, mild-mannered and respectful young man.  He is the brother of plaintiff L.F..  He is African-American.

4.   Plaintiff L.F., now 17 years old, was 15 years old at the time of the events giving rise to this lawsuit.  Mr. and Ms. Murphy, her aunt and uncle, have been her legal custodian since she was an infant.  She, too, is a soft-spoken, respectful and well-mannered teen.  She is the sister of plaintiff Happy Frazier.  She is African-American.  She sues here by her legal custodian and next friend, Rodney Murphy.

5.   Plaintiff Rodney Murphy is an adult resident of Gloucester Point.  He and his wife Pamela have been married for 25 years and have been the legal guardians of Mister and L.F. since the latter were infants.  He is African-American.

6.   Plaintiff Pamela Murphy is an adult resident of Gloucester Point.  She and her husband Rodney Murphy have been married for 25 years and have been the legal guardians of Mister and L.F. since the latter were infants.  She is white.

7.   Defendant Stephen T. Cooke is a resident of Gloucester Point, Virginia.  At the time relevant to this action, he was 53 years old.  At the time relevant to this action, he lived, and he still lives, on the same block as the plaintiffs, three lots away.  He is white.

8.   Defendant Sandra T. Cooke is a resident of Gloucester Point.  She is the wife of defendant Stephen Cooke.  At the time relevant to this action, she lived, and she still lives, with her husband on the same block as the plaintiffs, three lots away.  She is white.

9.   Defendant Douglas Clark is a resident of Gloucester, Virginia.  At the time relevant to this action, he was 21 years old and the boyfriend of defendant Christina Cooke.  He is white.

10.   Defendant Christina Anna Cooke is a resident of Hayes, Virginia.  She is the daughter of defendants Stephen and Sandra Cooke.  At the time relevant to this action she was the girlfriend of defendant Clark.  On information and belief, at the time relevant to this action,

she lived with her parents in their Gloucester Point home.  She is sued solely on plaintiffs' claims under *Code of Va.* §§55-82 and 55-82.1, as a necessary party to void her parents' fraudulent transfer, and her fraudulent receipt, of their property, and on no other claims.


Claim for Relief

Racially Motivated Harassment

11.  Plaintiffs moved into their Gloucester Point, Virginia home in November 2014. They rent their home.

12.  As of July 2015, the racial composition of Gloucester Point was almost 90% white and less than 10% African-American.

13.  Since moving in, Happy, L.F., and Rodney Murphy have been the only African-Americans on their and the Cookes' block.

14.  Within a month of moving into the neighborhood, one of plaintiffs' neighbors' tires were slashed while the car was in his driveway.  Defendant Sandra Cooke told the neighbor that she had seen Happy vandalizing another home on the block, and that it was likely Happy who had slashed the tires.  Later, Ms. Cooke also circulated a rumor that L.F. had vandalized homes on the block.

15.  Prior to this incident, the neighbor whose tires had gotten slashed had been friendly toward Happy and his family.  After hearing Ms. Cooke's rumor, the neighbor stopped talking in a friendly fashion toward them.  This continued for a period of months.

16.  In fact, neither Happy nor L.F. vandalized any home on the block, and Happy did not slash the neighbor's tires.  Once the neighbor whose tires had gotten slashed got to know Happy and his family, he apologized to Happy for ever having believed Happy had done so.

The Assault and Battery

17.  In July 2015, the house next door to the Murphys was vacant, the owners having placed the house for sale and relocated.  Before leaving, the owners of this house had told Happy that he was free to enter their property to fish from the dock at the end of their yard.

18.  Prior to July 12, 2015, plaintiffs had never met defendants Stephen and Sandra Cooke or Douglas Clark.

19.  On July 12, 2015, defendants Stephen Cooke and Clark, joined by a female companion, began drinking alcohol.  At some point in the day, they entered the backyard of the vacant home adjacent to plaintiffs' home and continued drinking on the back deck of that yard.

20.  On July 12, 2015, Rodney and Pamela Murphy hosted a birthday party at their home for their grandson Tony, who was turning eight years old.  Among the friends and relatives at the party were ten children between the ages of five and ten.  Seven of them were African-American, one was Asian, and two were white.

21.  On that afternoon, the young children went into the Murphys' backyard to play "manhunt," a variation of hide-and-go-seek.  Happy and L.F. joined the game to play with and supervise the younger children.

-6-

22. Some of the younger children proceeded to run into the neighboring vacant property to hide, by way of a pathway leading into the backyard from the front of the property.  Happy, who was "it," remained in the Murphys' yard while the other players hid.

23. As the younger children ran to hide, Happy heard adult voices coming from the neighboring back yard saying: "Look at all those niggers over there; do you see them?  Look at those little niggers running through the driveway."  Happy then saw his ten year-old nephew running from the neighboring yard looking frightened.

24. On information and belief, defendant Stephen Cooke made the statements Happy heard.  By his own later admission in open court, defendant Stephen Cooke also called the children "dirt frogs" and "tree monkeys."

25. Alarmed at what he was hearing and not knowing if any other young children were in the neighboring backyard, Happy hopped over the chainlink fence, approximately three feet high, separating the two properties to enter the neighbor's yard, in order to make sure all of the children were safe.

26. Once in the backyard, Happy saw defendants Stephen Cooke and Clark sitting on the deck of the vacant house.  He asked them why they were calling the children racial slurs and told them that doing so was wrong.  Defendants Stephen Cooke and Clark together stepped off the deck onto the ground and walked over to Happy in a menacing manner.

27. Defendant Stephen Cooke, a grown man, was about 6 feet 4 inches tall, weighed about 250 pounds and, by his own account, lifted weights several times a week.  Defendant Clark, also an adult, was nearly 6 feet tall and weighed 215 pounds.  Happy was a 16 year old youth.

28.   With defendant Clark next to him, defendant Stephen Cooke walked up to and stood nose-to-nose with Happy.  Cooke demanded:  "What are you going to do?  Do you want some of this?  Go ahead and jump, nigger! Jump, nigger, jump!"

29.   Happy felt threatened by defendant Stephen Cooke's words and racial slurs and by both men's demeanor.  Happy could smell the odor of alcohol on Mr. Cooke's breath.  He began backing away from the two men.

30.   Defendants Stephen Cooke and Clark followed Happy as he backed away, with Mr. Cooke still standing nose-to-nose with Happy, until Happy was backed up against the fence.

31.   Mr. Cooke kept repeating, "jump, nigger, jump."  Happy understood this to be, and on information and belief it was, an invitation to take offensive action.  Being of a peaceful disposition, and also fearful of contending with two grown men displaying racially motivated physical aggression, Happy did not react to this provocation.

32.   Backed against the fence and unable to withdraw any further, Happy called to the other children, now back in the Murphys' backyard, to get help.

33.   Pamela Murphy and another adult thereupon came out of the Murphy's house and into the yard, walked up to the fence separating their and the neighbor's yards, and demanded that Mr. Cook and Clark leave Happy alone, saying that they would call the police if the two men did not leave at once.  In reply, Mr. Cooke stated that they should go ahead and call the Sheriff, who, Mr. Cooke said, he knew well and who would cause him no harm.

34.   Mr. Cooke then lowered his shoulder and shoved it into Happy's chest, causing him to stagger into defendant Clark, who was standing to Happy's side.

35.  Defendant Clark exclaimed, "He jumped!," whereupon he struck Happy in the face, put him in a headlock, pulled him to the ground, and repeatedly punched him in the head.

36.  Ms. Murphy stood on the Murphys' side of the fence, yelling at the two men to let Happy go.  They did not relent, however.

37.  Upon seeing this attack on her brother, L.F. ran around the fence into the neighbors' yard and yelled at the men to stop.  Mr. Cooke forcefully pushed L.F.'s chest so as to push her away, causing her to stumble backwards.  He told her that Happy had "jumped," and physically restrained her from trying to pull her brother free from defendant Clark's pummeling.

38.  Defendants' attack on Happy reflected their concerted plan to intimidate, harass and injure him because of his race and because he had challenged their prerogative as white people to direct racial slurs at children of color who were visiting the Murphy home.

39.  Defendant Stephen Cooke's repeated use of the word "nigger," and defendant Clark's endorsement thereof, while they together threatened and attacked Happy in front of his family, and while defendant Stephen Cooke pushed L.F. away, were intended to communicate to plaintiffs that they were inferior to defendants Stephen Cooke and Clark because they are African-American, or, in the case of Ms. Murphy, because they associate with African-Americans.

40.  From the beginning of his interaction with defendants, Happy did not hit or threaten either of defendants Stephen Cooke or Clark.  He instead submitted passively to the abuse and beating, believing that any other response would escalate their violence to his detriment.

41.  After repeatedly punching Happy in the head, defendant Clark asked Happy whether he had "had enough," to which Happy responded that he had.  Defendant Clark punched him one last time in the face, and released his headlock.  Happy immediately got up, and ran into his own yard and into his house.

42.  The Murphys called the Sheriff immediately following defendants' attack.

43.  When the Sheriff's deputies arrived, the Murphys explained what had happened and directed them to defendant Cooke's home.  The deputies found defendant Clark hiding in the Cookes' home behind boxes in a storage room.  When the deputies brought defendant Clark outside so that he could be identified as having participated in the attack, he had changed clothes and put on a hat in a vain attempt to conceal his identity.

44.  Defendant Stephen Cooke, in an attempt to blame the victims of his attack, told the deputies that the Murphys, Happy, and L.F. had been a problem ever since they moved in, and repeated his false rumor about Happy slashing the neighbor's tires.  There was no basis for Stephen Cooke's claims.

45.  Defendants Stephen Cooke and Clark then were arrested.

46.  In Gloucester County Circuit Court, defendants Stephen Cooke and Clark were charged with and convicted of assault and battery – Cooke and Clark of Happy, and Cooke also of L.F. – and sentenced to jail.  They did not appeal their convictions or sentences.

47.  Happy suffered substantial bruising to his head and face, with associated pain and swelling, for which an emergency medical technician who responded to the scene of the attack gave him ice packs, Tylenol, and Ibuprofen.  In the days and weeks that followed the attack, he

suffered headaches, sleeplessness, nausea, and bouts of vomiting.  The bruising subsided after several weeks of applying ice to his face and taking the pain medications.

48.  The consequences of defendants Cooke's and Clark's assault have been severe for Happy, L.F., and the Murphys.  The attack fractured feelings of safety and belonging that had allowed them, an interracial family, to move to Gloucester without fear of neighbors' race-based hostility or violence.  Defendants' attack and racial invective terrified plaintiffs.  Feelings of anger, shock, fear, humiliation, rage, and disbelief filled all of them and many of these feelings remain with them to this day.  Because defendant Stephen Cooke lives on the same street, they have lived in a constant state of uncertainty and fear for their own safety and that of visiting family members and friends, particularly those who are African-American.

49.  Having witnessed Happy's beating, Ms. Murphy was an emotional wreck in the weeks following the attack, suffering from sleeplessness and acute sensitivity to ensuring her family's safety.  She had never witnessed racially motivated violence before this attack, much less against her kin.

## The Subsequent Harassment

50.  In the immediate aftermath of the attack, Mr. Cooke shouted in front of the Murphys' home, "Enjoy your house for the next two weeks because I'm going to buy it and evict you. You'll be out on the streets!," or words of similar import, intended to confirm Mr. Cooke's intent to drive plaintiffs from their home.

51.  In the week following the attack, plaintiffs and the Murphys were visited by their neighbor who owned the vacant lot where the attack took place.  The neighbor told them that Mr. Cooke had called him and asked for the Murphys' landlord's phone number.

52.  Starting shortly after Mr. Cooke and Clark were arrested in connection with the attack, defendant Sandra Cooke began routinely blaring her horn when driving by plaintiffs' home.  As of the filing of this lawsuit, Ms. Cooke continues to blare her horn in this manner. There was and is no legitimate cause for her doing this.  On information and belief, she does it in order to harass plaintiffs and express endorsement of her husband's racially motivated attack, so that plaintiffs will want to leave their home.

53.  For at least four months following defendants Stephen Cooke's and Clark's assault and battery convictions, defendant Sandra Cooke blared her horn in front of plaintiffs' home Monday through Saturday in the early morning.  During the next several months, the frequency of her honking decreased to about once a week.  On information and belief, she honks in this manner with Mr. Cooke's knowledge and encouragement, as an expression of hostility to plaintiffs and their family and as an effort to make them move from their home.

54.  On information and belief, Ms. Cooke honks her car's horn in this manner with the knowledge that Mr. Murphy, who works midnight shifts, sleeps during the day when she honks, and with the intent that her honking disturb Mr. Murphy's rest in his home.

55.  In October 2016, L.F. and her 15-year-old cousin, also part African-American, were playing at a beach accessible only to residents and guests of residents of the community in which plaintiffs and the Cookes live.

56. Mr. Cooke approached L.F.'s cousin and demanded that she identify the house with which she was associated.

57. Mr. Cooke continued his questioning aggressively and unrelentingly, causing L.F. and her cousin to grow so uncomfortable that they left the beach and returned to the Murphys' home. On information and belief, Mr. Cooke engaged the girls in this manner precisely so that they would stop using the residents' beach.

58. By their actions and statements set forth above, defendants Stephen and Sandra Cooke engaged in a concerted campaign of race-based hostility, harassment, and violence intended to drive plaintiffs from their home, which, in fact, has made plaintiffs want to move. On information and belief, the Cookes have been and are motivated by racial animosity and hostility toward African-Americans living in their neighborhood.

59. The attack and ongoing harassment has devastated plaintiffs. They moved into their Gloucester home hoping to take advantage of what seemed like an ideal location and expecting to buy their home pursuant to their rent-to-buy contract. Defendants' attack and harassment extinguished these prospects.

60. An African-American man who had experienced the hostility bred by Jim Crow laws and race-based violence against African-Americans, Rodney Murphy was outraged and heartbroken that his own children had been victims of the kind of racial hatred and violence associated with the Jim Crow South.

61. As a result of defendants' ongoing hostility, the Murphys felt unable to ensure the protection of their family. Happy and L.F. became scared of their hostile neighbors. Happy, an avid runner, discontinued his regular jogs through the neighborhood following the attack. Ms.

Murphy discontinued her nightly walks around the block. Happy, L.F., and their guests no longer felt comfortable playing outside in the vicinity of their home, for fear of further racial intimidation and violence, nor did Mr. and Ms. Murphy feel comfortable letting them do so.

## The Fraudulent Transfer of Assets

62. On July 7, 2016, plaintiffs' counsel sent a letter to defendants Stephen Cooke and Clark informing them of their potential civil liability for their attack on Happy and L.F. and plaintiffs' intent to file suit unless the matter could be resolved by agreement.

63. On July 15, 2016, Stephen and Sandra Cooke transferred, by deed of gift, one of their two Virginia homes, which they held jointly, to their daughter, defendant Christina Cooke. At the time of the attack Christina Cooke also was the girlfriend of defendant Clark. She knew of the attack, and, on information and belief, lived with her parents in their Gloucester Point home.

64. Given the relationship of Mr. and Ms. Cooke and their daughter, the lack of consideration for the transfer, and the temporal proximity between Mr. Cooke's receipt of notice of plaintiffs' intent to file suit on the one hand and the transfer on the other, on information and belief the transfer of property was made with the intent to hinder, delay, or defraud plaintiffs in their collection of any judgment that may be forthcoming in the instant suit.

65. At the time of the transfer, Christina Cooke was aware of her father's and her boyfriend's criminal convictions for the assault and battery of Happy and L.F., and, on information and belief, was aware of impending civil litigation and her father's and her boyfriend's receipt of counsel's letters. Christina Cooke knew or should have known of her

parents' intent to alienate their assets in order to hinder collection of any judgment in plaintiffs' announced civil case.

Causes of Action

Count I (Against Stephen Cooke and Douglas Clark)<br>
Conspiratorial, Racially Motivated Violence Towards Happy<br>
42 U.S.C. §1985(3); U.S. Const. Am. XIII

66.  By their actions set forth above, defendants Stephen Cooke and Clark conspired to intimidate, harass, and ultimately attack Happy because of a shared racial bias against African-Americans and a desire to assert superiority over him because they are white.  The discriminatory animus fueling defendants Stephen Cooke's and Clark's coordinated actions were taken for the purpose, and had the effect, of depriving Happy of the right to be free from the badges and incidents of slavery abolished by the Thirteenth Amendment to the United States Constitution.  This concerted, racially motivated violence constitutes a conspiracy under 42 U.S.C. §1985(3) to deprive Happy of his Thirteenth Amendment rights.

Count II (Against Stephen Cooke and Douglas Clark)<br>
Conspiratorial, Racially Motivated Violence Towards L.F.<br>
42 U.S.C. §1985(3); U.S. Const. Am. XIII

67.  Defendant Stephen Cooke assaulted L.F. as set forth above in furtherance of his and defendant Clark's joint design to facilitate Clark's continued beating of Happy.  Cooke's assault on 15-year-old L.F. communicated an implied threat of further racial violence at his or Clark's hands if she did not heed his directive not to interfere with Clark's racially motivated beating of Happy.  The discriminatory animus fueling defendants Stephen Cooke's and Clark's coordinated

actions were taken for the purpose, and had the effect, of depriving L.F. of the right to be free

from the badges and incidents of slavery abolished by the Thirteenth Amendment

to the United States Constitution.  This concerted, racially motivated violence constitutes a

conspiracy under 42 U.S.C. §1985(3) to deprive L.F. of her Thirteenth Amendment rights.


Count III (Against Stephen and Sandra Cooke)
Intimidation and Interference With Exercise of Fair Housing Rights
42 U.S.C. §3601, *et seq.*

68.  Stephen and Sandra Cooke's actions and statements set forth above comprised a

racially motivated campaign to intimidate plaintiffs, interfere with their use and enjoyment of

their home, and drive them out of their home.  On information and belief, this campaign was

motivated by racial animosity and resentment toward plaintiffs for having moved into the all-

white neighborhood and for having challenged Mr. Cooke's racially motivated attacks on Happy

and L.F..  This campaign was initiated and executed with the intent to interfere, and had the

effect of interfering, with plaintiffs' right to rent and enjoy their home without racial

discrimination, in violation of the Fair Housing Act, 42 U.S.C. §§3604, 3617; 24 C.F.R.

§100.400(c)(2).


Count IV (Against Stephen Cooke)
Denying Plaintiffs the Right to Hold Property on Equal Basis as Whites
42 U.S.C. §1982

69.  Defendant Stephen Cooke's actions and statements set forth above were intended to

deprive plaintiffs of the right to occupy, use, and enjoy their home because of their race.  As a

result of his actions, plaintiffs no longer feel comfortable living in their home, live in fear of

further race-based violence and harassment, and wish to move.  This has deprived plaintiffs of the right to hold, occupy, and enjoy the use of their home on the same basis as white people, in violation of 42 U.S.C. §1982.

Count V (Against Sandra Cooke)
Denying Plaintiffs the Right to Hold Property on Equal Basis as Whites
42 U.S.C. §1982

70.  Defendant Sandra Cooke, through her actions and statements set forth above, intended to deprive plaintiffs of the right to occupy, use, and enjoy their home because of their race.  As a result of her actions, plaintiffs no longer feel comfortable living in their home, live in fear of further race-based violence and harassment, and wish to move.  This has deprived plaintiffs of the right to hold, occupy, and enjoy the use of their home on the same basis as white people, in violation of 42 U.S.C. §1982.

Count VI (Against Stephen and Sandra Cooke)
Conspiracy to Deny Plaintiffs the Right to Hold Property on Equal Basis as Whites
42 U.S.C. §1985(3); 42 U.S.C. §1982

71.  Defendants Stephen and Sandra Cooke's discriminatory animus led them to engage in a racially motivated campaign to intimidate plaintiffs, interfere with their use and enjoyment of their home, and drive them out of their home.  As a result of Mr. and Ms. Cooke's actions, plaintiffs no longer felt comfortable living in their home.  During the period that Happy and L.F. continued to live with the Murphys, they lived in fear of further race-based violence and/or harassment.  These coordinated actions were taken for the purpose of interfering with plaintiffs' use and enjoyment of their home, and making them want to leave their home, all on the basis of

their race or the racial composition of their family.  This concerted, racially motivated action constitutes a conspiracy under 42 U.S.C. §1985(3) to deprive plaintiffs of their right under 42 U.S.C. §1982 to hold property on an equal basis as white people.

### Count VII (Against Stephen Cooke and Douglas Clark)
Racially Motivated Intimidation, Harassment, and Violence Towards Happy
*Code of Va.* §8.01-42.1

72.  Stephen Cooke's and Clark's acts of intimidation, harassment, and violence toward Happy were motivated by racial animosity, in violation of *Code of Va.* §8.01-42.1.

### Count VIII (Against Stephen Cooke and Douglas Clark)
Racially Motivated Intimidation, Harassment, and Violence Towards L.F.
*Code of Va.* §8.01-42.1

73.  Stephen Cooke's and Clark's acts of intimidation, harassment, and violence toward L.F. were motivated by racial animosity, in violation of *Code of Va.* §8.01-42.1.

### Count IX (Against Stephen Cooke and Douglas Clark)
Assault and Battery of Happy

74.  By their actions set forth above, defendants Cooke and Clark jointly assaulted and battered Happy.

### Count X (Against Stephen Cooke)
Assault and Battery of L.F.

75.  By his actions set forth above, defendant Stephen Cooke assaulted and battered L.F..

Count XI (Against Stephen, Sandra, and Christina Cooke)
Fraudulent Transfer, *Code of Va.* §§55-80, 55-82, 55-82.1

76.  By transferring their property to their daughter with the intent to delay, hinder or defraud plaintiffs, tort claimants who had put Mr. Cooke on notice of their claims, Stephen and Sandra Cooke violated *Code of Va.* §55-80.  Christina Cooke either knew or should have known of Mr. and Ms. Cookes' fraudulent intent, rendering her title void.  Plaintiffs will seek to void the transfer prior to judgment on their claims pursuant to *Code of Va.* §55-82 and seek reasonable attorney's fees pursuant to §55-82.1.  The court may exercise pendent party jurisdiction over Christina Cooke, as she is a necessary party to the claim, and exercising pendent party jurisdiction serves the policies of judicial economy, convenience, and fairness to the litigants.

\*

Wherefore, plaintiffs ask that they be granted, separately:

–    their actual damages against defendants Stephen Cooke, Sandra Cooke, and Douglas Clark appropriate to the proof at trial;

–    punitive damages against defendants Stephen Cooke, Sandra Cooke, and Douglas Clark appropriate to the proof at trial;

–    an order voiding Stephen and Sandra Cooke's fraudulent transfer of their home to Christina Cooke;

–    an award of their costs, including reasonable attorneys' fees; and

–    such other relief as is just.

Plaintiffs request trial by jury.

-19-

Respectfully submitted,

MISTER FRAZIER, *et al*.,

By counsel

Dated:   May 25, 2017

Counsel for Plaintiffs:

//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com
**FrazierMister\Pleadings\Complaint**

//s// Maxwelle C. Sokol
Maxwelle C. Sokol, #89589
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
msokol@robinhoodesq.com

//s// Frank A. Edgar, Jr.
Frank A. Edgar, Jr., #36833
Goldstein, Edgar & Reagan
741 J. Clyde Morris Boulevard
Newport News, VA  23601-1534
757. 873.8773  / Fax: 757.873.8713
faedgarjr@ibglaw.com