IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

FILED
NOV 17 2017
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

MISTER FRAZIER, *et al*

      Plaintiffs,

v.                                  CIVIL ACTION NO. 4:17-cv-54

STEPHEN T. COOKE, *et al*
      Defendants.

*MEMORANDUM OPINION AND ORDER*

Before the Court are Defendants' Motions to Dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Having reviewed the Parties' filings, this matter is ripe for judicial determination. For the reasons set forth below, Defendants' Motions are **GRANTED IN PART AND DENIED IN PART**.

## I. FACTUAL AND PROCEDURAL HISTORY

This case involves an alleged racially motivated attack that two white men carried out against two teenager African-American neighbors. Following the attack, Defendants are alleged to have engaged in a campaign of racial violence, harassment, and intimidation to force Plaintiffs, the only African-American family on the block, to leave their home and neighborhood. Plaintiffs also allege that following notice of a potential suit, Defendants fraudulently transferred property to frustrate their anticipated recovery.

Plaintiffs filed an initial complaint on May 25, 2017, and alleged violations of the Thirteenth Amendment, 42 U.S.C. § 1982, 42 U.S.C. § 1985(3), and the Fair Housing Act. ECF No. 1 at 3. Plaintiffs' claims for assault and battery, hate crimes, and the fraudulent transfer were

1

brought under Virginia state law. *Id.* Plaintiffs argue this Court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear the state claims because they arise out of the same facts as the federal claims. *Id.*

Defendant Douglass Clark filed a 12(b)(6) motion to dismiss on June 28, 2017. ECF No. 11. Plaintiffs filed a motion in opposition and Defendant Clark filed a rebuttal brief. ECF No.13; No. 15. Defendants, Stephen, Sandra, and Christina Cooke also filed 12(b)(6) motions. ECF No. 18; No. 20; No. 22. On August 8, 2017, the Court granted Plaintiffs' motion to file an amended complaint. ECF No. 26. The Court stipulated that any Defendant could file a response to the amended complaint but if they chose not to, their original response would stand. *Id.* Plaintiffs filed their amended complaint on August 8, 2017, and Defendants did not file additional responses. ECF No. 27. Plaintiffs filed a reply to the Cooke Defendants' Motions to Dismiss and the Cooke Defendants filed rebuttals. ECF No. 31; No. 32. Defendants also requested a hearing on its motions to dismiss. ECF No. 33; No. 16. The Court will address all the parties' motions and finds that a hearing is not necessary.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A court will only grant

a motion to dismiss if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Johnson v. Mueller*, 415 F.2d 354 (4th Cir. 1969).

Although a complaint need not contain detailed factual allegations, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the factual allegations alleged by the plaintiff do not nudge the plaintiff's claims "across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.

## III. DISCUSSION

**Count I: Conspiratorial, Racially Motivated Violence**

Plaintiffs allege Defendants Stephen Cooke and Douglass Clark conspired to intimidate, harass, and ultimately attack Plaintiff Happy because of his race in violation of 42 U.S.C. § 1985 (3) and the Thirteenth Amendment. ECF No. 27 at 14. Both Defendants argue that Plaintiffs' conspiracy claim fails because there was not an "agreement" or "meeting of the minds" to attack or target Happy because of his race. *See* ECF No. 12 at 4-5; No. 19 at 5. Defendants also assert that Plaintiffs present conclusory statements or legal conclusions regarding its racial conspiratorial claims, not facts as required by the federal rules. *Id.*

To establish a cause of action for conspiracy under Section 1985, the plaintiff must prove the following: 1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

3

*Simmons v. Poe*, 47 F.3d. 1370, 1376 (citing *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985)). The plaintiff must show an agreement or a "meeting of the minds." *Id.* at 1377. It is also well settled that where a conspiracy is alleged, "[t]threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, similarly do not suffice." *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Twombly*, 550 U.S. at 557)). The plaintiff must plead facts that amount more than "parallel conduct and a bare assertion of conspiracy," and must plausibly suggest agreement rather than being merely consistent with it. *Id.*

Here, Plaintiffs allege sufficient facts that Defendants conspired to commit violence against Happy because of his race. In support, Plaintiffs allege that prior to the assault, Cooke stated "look at all those niggers over there, do you see them? Look at those little niggers running through the driveway." ECF No. 27 at 6. He is also alleged to have called the children "dirt frogs" and "tree monkeys." *Id.* Defendant Clark is alleged to have been with Defendant Cooke drinking alcohol when these statements were made. *Id.* at 5.

The complaint further alleges that after he heard these statements, Happy confronted Cooke and Clark. *Id.* at 7. Happy asked Defendants why they used racial slurs and stated they were wrong for doing so. *Id.* Next, Cooke and Clark are alleged to have "together stepped off the deck onto the ground and walked over to Happy in a menacing manner." *Id.* Then, with Clark next to him, Cooke "walked up and stood nose-to nose- with Happy and stated "[w]hat are you going to do. Do you want some of this? Go ahead and jump, nigger! Jump, nigger, jump!" *Id.* The complaint alleges that Happy felt threatened by the racial slurs and backed away. *Id.* Both men are alleged to have continued to follow Happy and Cooke kept repeated "jump, nigger jump." *Id.* Then, Cooke is alleged to have shoved Happy in his chest causing him to stumble into

Clark, and Clark responded by punching and putting Happy into a headlock. *Id.* at 8. The complaint alleges that Cooke's bump was a "confrontation bump." *Id.* Given the sequence of these events, Plaintiffs pled sufficient facts that Defendants Cooke and Clark conspired to use racial violence against Happy.

Defendants argue that there was no communication between Cooke and Clark and therefore there was no agreement or meeting of the minds to assault Happy because of his race. *See* ECF No. 12 at 4-5; No. 19 at 5. This argument fails because plaintiffs establishing a civil rights conspiracy "need not produce direct evidence of a meeting of the minds." *See Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996). Plaintiffs, however, may present "specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Id.* The evidence must at least reasonably lead to an inference that co-conspirators positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan. *See id.*

Considering the circumstantial evidence presented, and the assumption that the facts alleged are true, Plaintiffs pled sufficient facts demonstrating a meeting of the minds. First, prior to the assault, Cooke shouted racial slurs towards the children playing in the yard, including Happy. ECF No. 27 at 6. When confronted about the racial slurs, both Defendants are alleged to have "together stepped off the deck onto the ground and walked over to Happy in a menacing manner." *Id.* at 7. Then, with Clark next to him, Cooke stood nose to nose with Happy and continued blaring racial slurs. *Id.* Happy backed away after feeling threatened by the racial slurs; however, both men are alleged to have continued to follow him with Cooke again blaring racial slurs. *Id.*

These actions follow a pattern where a racial slur is uttered followed by threats of violence. Although Defendant Cooke stated the racial slurs, Defendant Clark accompanied Cooke in proceeding physically towards Happy following the racial slurs. This sequence occurred twice followed by Defendant Cooke pushing Happy into Clark and Clark then physically attacking Happy. The progression of these sequences, coupled with the fact that both Clark and Cooke are Caucasian and Happy African-American, are sufficient to demonstrate that it is plausible Defendants tacitly agreed to intimidate, harass, and attack Happy because of his race. This conclusion is consistent with the Court's parameters on a 12(b)(6) motion because it is a "context specific-task that requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomeli*, 588 F.3d 186, 193 (4th Cir. 2009).

Accordingly, Defendants' Motion to Dismiss Count I is DENIED.

**Count II: Conspiratorial, Racially Motivated Violence**

In Count II, Plaintiffs allege Defendants Cooke and Clark conspired to intimidate, harass, and threaten violence against L.F. because of her race. Plaintiffs allege that following the attack on her brother, L.F. ran into the neighbor's yard and yelled at the men to stop. ECF No. 27 at 8. In response, Cooke pushed her away and caused her to stumble backwards. *Id.* Cooke then restrained L.F. to prevent her from removing her brother away from Clark's assault. *Id.* Defendants argue, as they did in Count I, that Plaintiffs fail to make sufficient factual allegations that there was a conspiracy, and specifically, an agreement between Defendants to assault L.F. because of her race. ECF No. 19 at 5-6; No. 12 at 5. Additionally, Defendant Cooke alleges that any action against L.F. was in response to her provocation, not because of her race. ECF No. 19 at 6.

6

Here, Plaintiffs fail to plead sufficient facts that Defendants conspired to intimidate, harass or commit an act of violence against L.F. because of her race. The facts allege that L.F. attempted to come to her brother's aid from Clark's physical attack but Cooke forcibly restrained and stopped her. The complaint does not contain any factual allegations that Cooke and Clark acted together in any manner towards L.F. In contrast to facts alleged in Count I, the facts here do not contain the same level of joint and concerted effort. In the exchange with Happy, following the racial slurs and Happy confronting and reprimanding them, Defendants are alleged to have stepped off the deck together and walked over to Happy in a menacing manner. *See* ECF No. 27 at 7. Then, both men are alleged to have followed Happy and one of the Defendants yelled racial slurs. *Id.* In that instant, there was a pattern of racial slurs followed by a threat of violence.

In contrast to Count I, no such pattern or sequence can be reasonably inferred from the alleged facts. In fact, there are no allegations that yield an inference that Clark was even aware of L.F.'s presence, nor were there any racial slurs directed at L.F. when she attempted to aid her brother. Without more, and even considering the facts in light favorable to Plaintiffs, the Court cannot conclude that there was an agreement to intimidate, harass or attack L.F. because of her race. While the facts presented make it possible that such actions occurred because of her race, they do not lead to an inference of plausibility.

Accordingly, the Motion to Dismiss Count II is GRANTED.

**Count III: Intimidation and Interference with Exercise of Fair Housing Rights**

In Count III, Plaintiffs allege that Defendants Stephen and Sandra Cooke unlawfully intimidated and interfered with the use and enjoyment of their home because of their race in violation of the Fair Housing Act, 42 U.S.C.A. § 3617 (2017). ECF No. 27 at 15. In support,

7

Plaintiffs contend that following the physical altercation, Stephen Cooke shouted in front of the Murphy's home "Enjoy your house for the next two weeks because I'm going to buy it and evict you. You'll be out on the streets!" *Id.* at 11. In addition, Plaintiffs allege Sandra Cooke blasts her horn while driving by their home in support of her husband's racially motivated attack and in an effort to harass, intimidate and drive them from their home. *Id.* Also, they allege Sandra Cooke made false statements about Happy slashing a neighbor's tires and that the neighborhood was fine until the Murphys moved there. *Id.* at 9. Lastly, Plaintiffs allege that Stephen Cooke aggressively questioned L.F's cousin at a community beach accessible only to residents and their guests regarding to which resident's home she belonged. *Id.* at 12. Defendants argue the Court should dismiss these counts because Plaintiffs fail to allege sufficient facts that the conduct was motivated by race. ECF No. 19 at 7; No. 21 at 5-6; No. 32 at 6-7. Moreover, they contend that the conduct did not rise to the level of "threatening, intimidating, or interfering" within the meaning of the statute. *Id.*

The Fair Housing Act (FHA) is "broad and inclusive" in protecting against conduct which interferes with fair housing rights and is subject to "generous construction." *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 212 (1972). Title 42 U.S.C. § 3617 (1988) states:

> It shall be unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted under or protected by §§ 3603, 3604, 3605 or 3606 of this Title.

To prevail on a § 3617 claim, the Plaintiffs must show: (1) they are a protected individual under the FHA; (2) they were engaged in the exercise or enjoyment of fair housing rights; (3) Defendants were motivated in part by an intent to discriminate, and (4) Defendants coerced, threatened, intimidated, or interfered with Plaintiffs on account of their protected activity under

the Fair Housing Act. *See People Helpers, Inc. v. City of Richmond*, 789 F. Supp. 725, 732 (E.D.Va.1992).

The Court finds that Plaintiffs pled sufficient facts that Defendants interfered with their housing rights because of their race. Plaintiffs clearly satisfy the first two elements. They are African American, a protected class under the FHA, and they were engaged in the exercise of fair housing rights, the purchase and establishment of residency in a neighborhood. *See* 42 U.S.C. § 3617; 24 C.F.R § 100.400(c)(2) (establishing that the Fair Housing Act extends to post-purchase discrimination because the interference with the "enjoyment of a dwelling" can take place at any time). Further, Plaintiffs pled sufficient facts that Defendants' were motivated by an intention to discriminate and that Defendants intimidated and interfered with Plaintiffs' enjoyment of their home.

Plaintiffs also pled sufficient facts to support its allegations that Defendants were motivated by an intention to discriminate on the basis of race. Specifically, Plaintiffs allege that immediately following the attack, Stephen Cooke stated that he was going to buy and evict Plaintiffs from their home and aggressively questioned L.F's cousin at a beach accessible to residents and their guests in an effort to stop them from using the beach. ECF. No. 27 at 11-12. Plaintiffs also allege that following the attack and her husband's arrest, Sandra Cooke blasts a car horn during the early morning hours when she drives by their home in an effort to harass, express hostility, and force them to move. *Id.* Sandra Cooke is also alleged to share her husband's racist views and disseminated false rumors that Happy slashed a neighbor's tires and vandalized the neighborhood. *Id.* at 12, 9. These alleged facts, in context with the previous racial slurs and physical altercation alleged in the previous counts, are sufficient circumstantial evidence to satisfy the third element. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250,

9

253 (4th Cir. 2009) (holding that a court draws all reasonable inferences in favor of the plaintiff in a 12 (b)(6) motion); *see also Johnson*, 415 F.2d at 355 (holding that a 12(b)(6) motion to dismiss should not be granted unless it "appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.")

Finally, on the remaining element, Plaintiffs pled sufficient facts that Defendants coerced, threatened or intimidated them on account of a protected activity under the FHA. *See* ECF No. 27. Defendants argue that the conduct did not rise to the level of harassment or behavior that the statute implicates because it did not include severe acts of violence or intimidation, *i.e.*, firebombing, throwing Molotov cocktails, or burning crosses on lawns. *See* ECF No. 19 at 8; No. 21 at 6; No. 32 at 6-7. However, such an argument fails because neither the cases nor legislative history of § 3617 proscribe a minimum level of intimidation or coercion necessary to violate the statute.

Moreover, even the case Defendants cite, *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n,* 388 F.3d 327, 330 (7th Cir. 2004), acknowledges "there are other, less violent but still effective, methods by which a person can be driven from his home and thus interfered with the enjoyment of it." The court also cites other forms of harassment that include sexual harassment and economic pressure. *Id*; *see also People Helpers Found., Inc. v. City of Richmond*, 781 F. Supp. at 1135-36 (finding that Plaintiffs stated a cause of action under § 3617 for violations of housing rights for African Americans and disabled people where defendants were alleged to have organized neighbors in front of building to threaten and intimidate, photographed occupants in an intimidating manner, and made indirect threats to local police department).

Accordingly, the Motion to Dismiss Count III is DENIED.

**Count IV & V: Denying Plaintiffs the Right to Hold Property on Equal Basis as Whites**

In Counts IV and V, Plaintiffs rely on the previous factual allegations and allege that Defendants deprived them of the right to occupy, use, and enjoy their home because of their race. Title 42 U.S.C. § 1982 (1994) provides that,

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

It is well settled that section 1982 protects the property rights of Black persons not to have their property interests impaired by white private citizens because of their race. *See City of Memphis v. Greene*, 451 U.S. 100, 120, 122 (1981). To succeed on a claim, a plaintiff must demonstrate that defendant impeded or restricted the use of his or her property on the basis of their race. *See Bradley v. Carydale Enter.*, 730 F. Supp. 709, 717 (E.D. Va. 1989) (citing *Greene*, 451 U.S. at 120)).

Here, Plaintiffs pled sufficient facts for a cause of action under 42 U.S.C.A. § 1982. In support, Plaintiffs offer the following: Stephen Cooke stating that he was going to buy and evict the Murphys from their home; Sandra Cooke honking her horn when she drives by the Murphy's home; and Stephen Cooke's aggressively questioning L.F's cousin to force them to leave a residential beach. These alleged incidents, which occurred after a physical altercation that involved the use of racial slurs, are sufficient circumstantial evidence to infer a racial animus. *See* ECF No. 27 at 9-12.

Plaintiffs also allege sufficient facts that the racial animus interfered with their ability to "hold" property within the meaning of the statute. Defendants argue that the interference must be destructive, disruptive or violent. *See* ECF No. 21 at 6-7; No. 19 at 9. Moreover, they argue

that the harassing conduct must be severe and must be directed towards the property, *e.g.*, firebombing, throwing Molotov cocktails, cross burnings on lawns, or physical assaults. *Id.* Defendants' narrow reading of Section 1982, however, is at odds with the broad scope of protection that Congress intended with the statute. In *Greene*, the Supreme Court held that Section 1982 is concerned with "the right of black persons to hold and acquire property on an equal basis with white persons and [to provide for] the right of blacks not to have property interests impaired because of their race." 451 U.S. at 122. Indeed, Section 1982 reflects Congress's desire to ensure that African Americans have the same "right to live wherever a white man can live." *See Jones v. Mayer Co.*, 392 U.S. 409, 437, 443 (1968). Here, Plaintiffs adequately allege that Defendants deprived them of their right to hold property on the basis of race: they fear for their safety and the safety of other guests, and specifically family members and guests who are African American; they no longer jog through the neighborhood; and they no longer feel comfortable outside the vicinity of their home. *See* ECF. No. 27 at 10-13. Therefore, Plaintiffs state a cause of action under 42 U.S.C.A. § 1982.

Accordingly, the Motion to Dismiss Count IV and V is DENIED.

**Count VI: Conspiracy to Deny Plaintiffs the Right to Hold Property on Equal Basis as Whites**

Plaintiffs also allege that Stephen and Sandra Cooke conspired to deprive them of the right to hold property on an equal basis as Whites in violation of 42 U.S.C. §1985(3) and 42 U.S.C. § 1982. ECF No. 27 at 17. The Court is familiar with the elements of these claims. *See, supra*, (Counts I and IV discussing elements). Because this is a conspiracy claim, at issue is whether there was an agreement between Defendants to deprive Plaintiffs of their right to hold property because of their race. Defendants argue this claim should be dismissed because

Plaintiffs fail to demonstrate that there was an agreement or meeting of the minds to deprive them of their property rights because of race. ECF No. 19 at 10; No. 21 at 8. The Court finds that Plaintiffs pled sufficient facts for a conspiracy claim under 42 U.S.C. §1985(3).

Plaintiffs allege, when Sheriff Deputies arrived following the physical altercation, Defendant Stephen Cooke yelled racial slurs at Plaintiffs and told deputies that the neighborhood was fine until Plaintiffs' family arrived. *See* ECF No. 27 at 9-10. They are also alleged to have repeated a false rumor that Happy slashed a neighbor's tires and that both Happy and L.F. vandalized the neighborhood at night. *Id.* Following this incident, Plaintiffs allege Defendants engaged in a pattern of harassment that included: Stephen Cooke threatening to buy and evict Plaintiffs from their home, Sandra Cooke blasting a car horn in front of their home to express hostility and to make them move from their home, and Stephen Cooke aggressively questioning L.F. and her guest to prevent them from using a beach accessible to residents. *Id.* at 11-12.

These incidents followed a physical altercation that included racial slurs and disparaging statements made to the deputies investigating the incident. The Court finds that all these allegations taken in context are sufficient circumstantial evidence to infer an agreement to deprive Plaintiffs of their right to hold property on the basis of race. This conclusion is consistent with the established principle of a civil rights conspiracy that plaintiffs "need not produce direct evidence of a meeting of the minds," but can "come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *See Hinkle*, 81 F.3d at 421. Based on the facts alleged, the Court can reasonably infer that Defendants "tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *See id.* Therefore, Plaintiffs state a cause of action under 42 U.S.C. §1985(3).

Accordingly, the Motion to Dismiss Count VI is DENIED.

**Count VII & Count VIII: Racially Motivated Intimidation, Harassment, and Violence**

Plaintiffs also state a claim for relief under Virginia Code § 8.01–42.1(A), which prohibits intimidation or harassment motivated by racial animosity. ECF No. 27 at 17. Defendants argue that the state counts should be dismissed for lack of subject matter jurisdiction because the basis for federal question, Counts I-VII, fails to state a cause of action. ECF No. 19 at 11; No. 12 at 5-6. This argument is meritless because all of Plaintiffs' federal claims survive the motion dismiss except Count II, and therefore the Court has original jurisdiction. *See* 28 U.S.C. § 1331 (1980). At issue is whether the court should exercise supplemental jurisdiction over the remaining state claims.

Title 28 U.S.C. § 1367(a) (1990) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Claims are considered part of the same case or controversy when they "derived from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Moreover, supplemental jurisdiction is discretionary and trial courts enjoy wide latitude in making this determination. *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In determining whether to exercise supplemental jurisdiction, a district court should undergo a flexible balancing analysis in which it "should consider and weigh . . . the values of judicial economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Gibbs*, 383 U.S. at 726 (holding that a federal court should hesitate to exercise jurisdiction over state claims if judicial economy, convenience, fairness, and comity are absent).

In this case, supplemental jurisdiction is proper because both the federal and state claim derive from a common nucleus of operative fact, *.i.e.*, intimidation, harassment, and violence motivated by race. Thus both claims are likely to involve the same evidence and parties and therefore supplemental jurisdiction would promote convenience to the parties and judicial economy.

Moreover, Plaintiffs pled sufficient facts to state a cause of action under Va. Code § 8.01–42.1(A). Here, Plaintiffs allege Defendants Stephen Cooke and Douglass Clark used racial slurs and physically attacked them because of their race. These facts are sufficient to establish a plausible claim under Va. Code § 8.01–42.1(A). Although Defendant Cooke argues that cases finding violations of this statute did not involve situations where the Plaintiffs instigated or provoked the confrontation, this argument fails because whether Plaintiffs instigated or invoked the confrontation is a question of fact and is not at issue at this stage. *See* ECF No. 19 at 12. Instead, the Court must determine whether Plaintiffs allege sufficient facts to state a cause of action and assumes that the facts alleged are true. Thus, given the statute and the facts alleged, Plaintiffs pled a cause of action under Va. Code § 8.01–42.1(A).

Accordingly, the Motion to Dismiss Count VII and VII is DENIED.

**Count IX & Count X: Assault & Battery**

Plaintiffs also state a cause of action for common law assault and battery. See ECF No. 27 at 18. Although, common law assault and battery do not involve the issue of racial motivation like the federal claims, they do derive from the same nucleus of operative fact as they involve an alleged physical altercation between Defendants and Plaintiffs. Thus, both claims are likely to involve the same evidence and parties and therefore supplemental jurisdiction would promote convenience and judicial economy. Moreover, Plaintiffs allege sufficient facts for assault and

15

battery as the complaint alleges Clark struck Happy in the face and Cooke pushed L.F's chest which caused her to stumble backwards. *See* ECF No. 27 at 8.

Accordingly, the Motion to Dismiss Count IX and X is DENIED.

**Count XI: Fraudulent Transfer**

Plaintiffs also allege that upon notice of a potential civil suit, Defendants transferred property to Christina Cooke with the intent to delay, hinder, or defraud them from potential recovery in violation of Virginia law. *Id.* at 18. Virginia Code § 55–80, provides in relevant part:

> Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void.

In a suit to set aside a fraudulent conveyance, proof of the fraudulent intent must be "clear, cogent and convincing," but may also be proved by circumstantial evidence. *See Hutcheson v. Savings Bank of Richmond*, 129 Va. 281, 289 (1921). Accordingly, Virginia courts have relied upon presumptions of fraud, which consist of facts and circumstances that establish a prima facie cause of fraudulent conveyance. *See id.* at 291.

Badges of fraud include: (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by transferor; and (6) fraudulent incurrence of indebtedness after the conveyance. *Id.* Virginia courts have held that potential tort claimants can be considered creditors if the putative debtor

has adequate notice of the claim. *See Luria v. Bd. Dirs. Of Westbriar Condo. Ass'n.*, 277 Va. 359, 366 (2009) (citation omitted). Finally, if a party establishes a badge of fraud, a prima facie case of fraudulent conveyance is established. *Temple v. Jones, Son & Co.*, 179 Va. 286, 298 (1942).

Here, Plaintiffs stated a cause of action for fraudulent transfer. Plaintiffs allege that on July 7, 2016, Plaintiffs' counsel informed Defendants Stephen Cooke and Clark of a potential suit for their attack on Happy and L.F. ECF No. 27 at 13. Following this notice, Plaintiffs allege eight days later, on July 15, 2016, Defendants Stephen and Sandra Cooke transferred their two Virginia homes to Defendant Christina Cooke. *Id.* These alleged facts are sufficient to demonstrate a badge of fraud: pursuit of the transferor or threat of litigation by his creditors at the time of the transfer. *See Hutcheson*, 129 Va. at 291. Here, Plaintiffs allege that the property was transferred after notice of a potential suit and legal liability. Therefore, Plaintiffs established a prima facie cause of action for fraudulent conveyance.

The Court must next determine whether it should exercise supplemental jurisdiction over this claim. Here, the claims do not derive from a common nucleus of operative facts. The claim to void a fraudulent transfer under the Virginia codes centers on the "intent" behind the transfer. *See Fox Rest Assocs., L.P. v. Little*, 282 Va. 277 (2011) (citation omitted) ("In a suit to set aside a fraudulent conveyance, proof of the fraudulent intent must be 'clear, cogent, and convincing.'"). In contrast, the federal claims focus on intimidation, harassment, and physical violence motivated by race in regards to housing, property and other constitutional and civil rights issues. Thus, the fraudulent transfer focuses on an entirely different set of elements that will likely involve different evidence. While the facts giving rise to both claims are related and overlap, they do not derive from a common nucleus of operative facts.

The Court, however, has discretion to exercise supplemental jurisdiction over this claim. Courts enjoy wide latitude in determining whether or not to exercise supplemental jurisdiction, even when all federal claims have been extinguished over which it had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). Supplemental jurisdiction "thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Cohill*, 484 U.S. at 350. Here, exercising supplemental jurisdiction would serve the purposes of convenience to the parties and judicial economy given that the Court will exercise supplemental jurisdiction over the other state claims.

Accordingly, the Motion to Dismiss Count XI is DENIED.

### IV. CONCLUSION

For the reasons outlined above:

> **Defendants' Motion to Dismiss Count I is DENIED.**
> **Defendants' Motion to Dismiss Count II is GRANTED.**
> **Defendants' Motion to Dismiss Count III is DENIED.**
> **Defendants' Motion to Dismiss Count IV is DENIED.**
> **Defendants' Motion to Dismiss Count V is DENIED.**
> **Defendants' Motion to Dismiss Count VI is DENIED.**
> **Defendants' Motion to Dismiss Count VII is DENIED.**
> **Defendants' Motion to Dismiss Count VIII is DENIED.**
> **Defendants' Motion to Dismiss Count IV is DENIED.**
> **Defendants' Motion to Dismiss Count X is DENIED.**
> **Defendants' Motion to Dismiss Count XI is DENIED.**

The Clerk is **DIRECTED** to electronically provide a copy of this Order to all parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
November /6 , 2017

/s/
Raymond A. Jackson
United States District Judge